EDWARD BISSAU MENDY, *PRO SE*
13308 Paramount Blvd
South Gate, CA 90280
(504) 339-4782 (Cellular)
E-Mail: ebmendy@me.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **EDWARD BISSAU MENDY**<br><br>    **Plaintiff**<br><br>                  -versus-<br><br>**LUIS A. TAPIA,**<br>**LAYLA MCCARTER,**<br>**DOES 1 through 10,**<br><br>    **Defendants** | **CIVIL ACTION**<br><br>**CASE NO.: _____**<br><br>**DIVISION:        _____**<br><br>**MAGISTRATE: _____**<br><br>**PETITION FOR DAMAGES, and**<br>**          JURY DAMAND** |

**PETITION FOR DAMAGES and JURY DEMAND**

   **NOW INTO COURT,** in proper person, comes Plaintiff, EDWARD BISSAU MENDY, and upon suggesting to this honorable court that Plaintiff wishes to bring a Complaint, Petition for Damages and Jury Demand against Defendants, Luis A. Tapia, Layla McCarter and various of their unknown co-conspirators involved in their scheme to slander Plaintiff Mendy, respectfully avers as follows:

## JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1332, based upon diversity of citizenship, and by reason of this court's pendent jurisdiction.

2. The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy Five Thousand Dollars ($75,000. 00) and the parties are citizens of different states. Thus, jurisdiction of this Court is also appropriate based upon diversity of citizenship pursuant to 28 U.S.C. Sections 1332.

3. Original Jurisdiction of this matter is conferred upon the Court by 28 U.S.C. Section 1332. Supplemental jurisdiction over State law claims is conferred upon this Court by 28 U.S.C. Section 1367.

4. Venue is proper within this jurisdiction pursuant to 28 U. S. C. Section 1391(b) because the claims stated herein, and the unlawful practices complained of herein occurred within the District of Nevada.

5. Plaintiff is informed and believe, and based thereon allege, that at all relevant times, the Defendants engaged in certain wrongful acts alleged below in the District of Nevada and engaged in other unlawful acts outside this District which caused injury to Plaintiff in this District.

6. Further, both named defendants live Las Vegas, which is located within the District of Nevada. Accordingly, venue properly lies in this District.

## PARTIES

7. Plaintiff herein (hereinafter also referred to as "Plaintiff") is EDWARD BISSAU MENDY (hereinafter also referred to "Mendy"), a natural person of the full age of majority, and having his principal place of residence in Morris County, State of New Jersey. At all times relevant, Mendy was and is a citizen of the State of New Jersey.

8. Made Defendants herein (hereinafter also collectively referred to as "Defendants") are the following:

A. LUIS A. TAPIA (hereinafter also referred to "Tapia"), on information and belief is a person of the full age of majority and professional boxing coach licensed or seeking to be licensed as a second under the laws of the State of Nevada, licensed to do business in and doing business in the District of Nevada as a professional boxing coach and/or manager. On belief and information, Tapia is a citizen of the State of Nevada and resident in las Vegas, Nevada. At all relevant times, Tapia was the coach, trainer, corner and second of Layla McCarter.

B. LAYLA MCCARTER, on belief and information, legally named Layla McCarter and also known by her fight name AMAZING LAYLA MCCARTER (hereinafter also referred to "Layla McCarter" or simply as "McCarter").  On information and belief Layla McCarter is a person of the full age of majority and professional boxer licensed under the laws of the State of Nevada, licensed to do business in and doing business in the District of Nevada as a professional boxer.  On belief and information, Layla McCarter is a citizen of the State of Nevada and is now resident in Las Vegas, Nevada.

C.   Does 1 through 10, the true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as Does 1 through 10 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when the same have been ascertained.

**GENERAL ALLEGATIONS**

9. On or about April 19, 2022, Edward Bissau Mendy (hereinafter also referred to as "Mendy") participated in a mandatory purse bid ordered by the World Boxing Council (WBC) for a world title elimination bout and WBC Silver World title fight between Defendant Layla

McCarter and Ivana Habazin (hereinafter also referred to as the "Fight").

10. As Tapia had been disparaging Habazin's skills the weeks leading to the fight, there was little interest in the bidding on the fight by the Boxing community.

11. On belief and information, only three promoters registered to bid.

12. Mendy submitted a winning bid of $16,00100 and was awarded the right to stage the Fight.

13. As required by the WBC, Mendy sent a deposit of $1,600.10, 10% of the bid he placed as required by WBC bid rules.

14. Further, Mendy sent a contract to both fighters, through their managers, using the model contract template proscribed by the Association of Boxing Commissions.

15. Habazin sent her contract to Mendy timely, and after adding amendatory language.

16. McCarter did not send in a signed contract or otherwise try to make changes to the contract.

17. On Friday, June 10, 2022, well after the deadline has passed, Mr. Tapia contacted the WBC and made various libelous and defamatory statements about Mendy.

18. Specifically, Tapia wrote the following:

> To all;
>
> Mr. Mendy has failed to meet the deadline. Pursuant to WBC rules for the purse bid of McCarter/Habazin, a venue was to be presented by Mr. Mendy no later than June 3rd.
>
> Contracts would be step #3 after a venue and date are presented. Regarding the "contract"; i.e. somewhere in Zagreb, Croatia venue TBA, promoter license TBA, at a weight of 147 plus or minus 2 pounds, glove weight 10 ounces, Sep 3rd or up to 30 days later at a different venue...etc. As anyone in the boxing business can attest, this contract is not legitimate in any way...nor is Mr. Mendy a legitimate promoter. My concerns about dealing with Mr. Mendy based on our past experiences have been previously expressed. This week he contacted my good friend and promoter Thell Torrence of Platinum Promotions in Las Vegas to ask

about paying to use his license to promote this fight. In any case, Mr. Mendy did not meet the WBC deadline for securing a venue. As Mr. Muniz put it, "enough is enough!"

Mr. Muniz has worked hard to give his fighter Ivana Habazin another shot at a title by disparaging my fighter Layla McCarter. His claims are dishonest and a blatant attempt to move Habazin above McCarter in the ratings. I hope the WBC recognizes this and credits the fighters for what is done in the ring. Enough time has been wasted between us all. I look forward to moving on and getting Layla back into the ring as soon as possible.

Thank you.

Luis A. Tapia
Manager/Layla McCarter

The above and various defamatory statements we made by Tapia via email to the WBC, it's president and others. See email chain attached here to and made part of as Exhibit "A".

19. In addition to sending the fight contract to Tapia, Mendy had made best effort to perform Mendy's duties as a promoter of the Fight under the terms of the bid as well as WBC rules, WBC practices and industry standards.

20. Among the things Mendy did in furtherance of the Contract was securing venue alternatives to organize the fight, and otherwise spending and inordinate amount of time, all in effort ensure a successful fight.

21. Beginning on or about April 12, 2022, and continuing to the present, Layla McCarter, Luis A. Tapia, as well as other acting in concert with them, engages in a scheme to defame Mendy by using him as a scapegoat for refusing to take fight with Habazin.

22. The June 10, 2022 and June 11, 2022 emails and the defamatory statements in them are simply a continuation of the defamation plot against Mendy.

23. To make their defamatory statements against Mendy believed by those they were made to as well as to inflict the most harm on Mendy, Tapia and McCarter routinely invoked their

friendship of decades with Mendy as a basis for having people believe their false statements. For example, Tapia wrote in a June 11, 2022 email: "I have know[n] for a long time and I know who you are. Everybody else doesn't." *Id.* Per him, as he knows Mendy best, people should believe him and form independent judgment of Mendy based on their interactions with him.

**FIRST CLAIM FOR RELIEF**
(Against Defendants McCarter, Tapia and
Does 1 Through Does 10 for Libel and Slander)
**LIBEL AND SLANDER**

24. Plaintiff realleges and incorporates by reference Paragraphs 7 through 23, inclusive, as though set forth at length and Plaintiff specifically hereby incorporates by reference all of the paragraphs of the General Allegations as though fully set forth herein.

25. Plaintiff is informed and believes, and thereon alleges that during and at all times relevant herein, Defendants McCarter, Tapia, and Does 1 Through Does 10, and each of them, uttered and published false and defamatory statements concerning Plaintiff, which were reasonably understood by those who hearing same as referring to Plaintiff.

26. Among other things, McCarter, Tapia, and Does 1 Through Does 10, and other associates and agents of Defendants, falsely represented that the sole reason for McCarter not fighting Habazin was because of Mendy's involvement.

27. Defendants falsely represented Mendy as Habazin's promoter and one that could not be trusted to successfully stage the fight.

28. Among the many defamatory statement made by defendants, specifically Luis Tapia, include but are not limited to the following:

    a.    Mendy is not a legitimate promoter.
    b.    The contract offered to McCarter by Mendy was "illegitimate."
    c.    Everyone in boxing could attest to the said Contract's illegitimacy.
    d.    Tapia had legitimate concerns about doing the Fight based on his personal experiences with Mendy and from dealing with Mendy.

  e. Mendy does not have any promoter license.
  f. Mendy called Thell Torrence to ask Torrence for the use of his Nevada license.
  g. Mendy used Mr. Tapia's name in order to induce Torrence to work with Mendy.
  h. Mendy used Ms. McCarter's name in order to induce Torrence to work with Mendy.
  i. Mendy did not know Mr. Torrence until he was recently contacted by Mendy about the Fight.
  j. Mendy will never be a promoter in Nevada, suggesting that Mendy cannot and will never qualify to be a promoter in Nevada.
  k. Mendy is not worthy of WBC trust.
  l. Mendy is not worthy of the trust Habazin and her manager, Charles Muniz.
  m. Mendy was pretending to be someone he is not.
  n. Mendy did not have any venue for the Fight
  o. Mendy is calling everyone to help him with a venue.
  p. Mendy is liar.
  q. Mendy's statements in response to Tapia's emails were all "Lies and lies."
  r. Mendy does not meet his obligations with anyone.
  s. Mendy did not meet his obligations with the WBC related to the fight.
  t. Mendy cannot be trusted to meet his obligations related to the fight.
  u. Mendy has failed to meet WBC rules for identifying a venue.
  v. Mendy has failed to meet WBC rules for negotiating a contract with McCarter.
  w. Mendy was not capable of promoting the Fight.
  x. Mendy did not have the financial resources to promote the Fight.
  y. Mendy is the worst boxing promoter of all time.
  z. Mendy is the worst boxing promoter in boxing.
  aa. Mendy knew in advance of Ms. McCarter's opponent on April 10, 2021 being overweight ["25 lbs over the weight we agreed."] but Mendy did not have the "courage and honesty to let Defendants Tapia and McCarter know.
  bb. Mendy cheats fighters.
  cc. Mendy cheats "Everybody else!"

29. The above statements were made via email Tapia to the WBC, WBC President Mauricio Sulaiman, the WBC's Malte Muller, Charles Muniz, Ivana Habazin, Layla McCarter, and Al Taylor on June 10th and 11th, 2022.

30. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 to Don King, Roy Englebrecht, Thell Torrance and others that the Defendants knew Plaintiff to have dealings with.

31. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 on Twitter, Facebook and other social media platform.

32. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 to anyone who had their audience and whenever Mendy's name or fighting Habazin was brought up.

33. Plaintiff is informed and believes, and thereon alleges that the above and similarly false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 with the intent of conveying the false and defamatory idea that Plaintiff was the worst promoter in boxing or the worst promoter of all time.

34. Further, the false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 with the intent of conveying the false and defamatory idea that Plaintiff was lying when he stated that he made numerous offers to McCarter in effort to get her to fight Habazin.

35. Further, the false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 with the intent of conveying the false and defamatory idea that Plaintiff was lying when he stated that he had known Defendants Tapia and McCarter for a long time and was surprised by their reluctance to fight Habazin.

36. Further, the false and defamatory statements were made by the Defendants McCarter, Tapia, and Does 1 Through Does 10 with the intent of conveying the false and defamatory idea that Plaintiff was lying when he suggested that the reason Defendant Tapia was reluctant to have

McCarter fight Habazin was because Habazin was taller and bigger, and perhaps Tapia realized that Habazin would be a difficult fight for his boxer.

 37. The words that were uttered by Defendants McCarter, Tapia, and Does 1 through 10 were slanderous per se because they made various false statements regarding Plaintiff's reputation, and by innuendo by impliedly accused Plaintiff of lying and/or otherwise an illegitimate promoter who was illegally perpetuating a fraud on the WBC by bidding on the fight he could not promoter, that Plaintiff was falsely representing himself as a promoter when he was not and otherwise falsely pretending to be someone he was not. On belief and information, Defendants knew the impact of their words on Plaintiff's relationships, his career as a promoter as well as on the seminal lawsuit he filed to take on Boxing powerhouses BoxRec, the Association of Boxing Commissions, and Kinahan Cartel members MTK Global and Daniel Kinahan, among others (Mendy v. BoxRec, PAMD 22-CV-00535).  On belief and information, Defendants have had and continue to have conversation with the BoxRec defendants and are engaged in their defamatory scheme in part as an extension of a smear campaign initiated by such defendants, to ingratiate themselves to the said defendants and/or improve their own standing in the boxing world.

 38. The words were understood by those who heard them in a way which defamed Plaintiff Edward Bissau Mendy because the words were intended to slander Plaintiff's reputation in an attempt to make the WBC and public, including people in the Boxing fraternity and associates of Mendy in particular, to believe that Plaintiff was not only an illegitimate and crooked promoter but also is "the worst promoter of all time," a Herculean crown to achieve given the fact that the sport of boxing historically has been is rife with some of the most unsavory characters and known crooked promoters.

9

39. Further, Defendants defamed Mendy by suggesting that Mendy made false allegations about fight offers and other statements against Defendants. Defendants suggested that their statements should be believed because of their personal knowledge of Mendy and long-term relationship and friendship with him. [Friends do not make statements about friends unless they are telling the truth and stating facts.]

40. As a direct proximate result of the above-described words, Plaintiff has suffered the special damages. Specifically, Plaintiff has suffered loss of his reputation, shame, mortification, emotional distress, and injury to his feelings, while suffering and continuing to suffer general and special damages as set forth herein.

41. As a direct proximate result of the above-described words, Plaintiff Mendy has suffered the other damages, including general damages, which will all be identified at trial as set forth herein.

42. The words described above were spoken by Defendants because of their selfish ends, and on belief because of their feelings of hatred and ill will toward the Plaintiff, as well as a desire to oppress and silence Plaintiff, and thus entitling Plaintiff to an award of exemplary and punitive damages in an amount according to law.

43. As a result of their actions and defamation of Plaintiff, Defendants have caused Plaintiff to suffer substantial damages as set forth herein.

44. As a result of the conduct alleged herein, Plaintiff has suffered damages in an amount to be proven at trial but on information and belief well over One Million Dollars ($1,000,000.00), for which defendants are liable, jointly and/or severally.

**SECOND CLAIM FOR RELIEF**
(Against all Defendants, particularly Tapia for Inducing Breach of Contract)
**INDUCING BREACH OF CONTRACT**

45. Plaintiff realleges and incorporates by reference Paragraphs 7 through 44, inclusive, as though set forth at length.

46. In early April 2022, Mendy informed Tapia that he was helping Don King Production with a fight that DKP had planned for June 11, 2022 and that Mendy would be happy to talk to DKP about putting on the proposed fight between McCarter and Habazin on the June 11, 2022 card.

47. Rather than let Mendy proceed with his plans of getting approval for the McCarter vs Habazin fight, Tapia contacted DKP and on information and believe conveyed defamatory statements to him.

48. The end result was that DKP ended up sidelining Mendy and not having him complete his participation as a co-promoter of the June 11, 2022 event.

49. Mendy's agreement to help DKP (the Contract) is a valid and existing contract between DPK and Plaintiff. Edward Bissau Mendy is informed and believes, and on that basis alleges, that Defendant Tapia and Does 1 through 10 had knowledge or should have had knowledge of the Contract yet still proceeded to induce a breach of the Contract by DKP and/or otherwise disrupted the Contract through improper means.

50. On belief and information, Defendant Tapia's purpose for doing what he did was to interfere with Plaintiff's prospective business advantage to his own.

51. As a result of Inducement Defendants' conduct, Plaintiff Mendy has suffered general, special, actual, and compensatory damages, in an amount to be proven at trial for all of which the Defendants are liable.

52. As a direct result of the actions of Defendants Tapia and Does 1 through Does 10, the contractual relationship between DKP and Plaintiff has been disrupted. Plaintiff has suffered actual and potential damages in an amount as yet unknown but which Plaintiff believes to be in excess of One Million Dollars.  Plaintiff shall amend his complaint to set forth the amount of his damages when ascertained.

53. The acts by Defendants and Does 1 through Does 10 were willful, wanton, malicious, and oppressive, and were undertaken with the intent to injure Mendy, and for profit and gain of the Defendants. Such conduct therefore justifies an award of exemplary and punitive damages to the full extent permitted by Nevada law and in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
(Against Tapia and Does 1 through Does 10 for interference with Business Relations)
### INTERFERENCE WITH BUSINESS RELATIONS

54. Plaintiff adopts, alleges, and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint, especially the allegations contained in paragraphs 7 through 53.

55. By the conduct described herein and above, Defendants  Tapia, and Does 1 through Does 10 have intentionally, maliciously, and wantonly interfered with the business relations of Plaintiff Mendy.

55. As a result of Inducement Defendants' conduct, Mendy suffered and continues to suffer general, special, actual, and compensatory damages, in an amount to be proven at trial and for all of which Defendants are liable.

56. Plaintiff has an advantageous business relationship with DKP and Don King.  Plaintiff also had advantageous business relations Azeez Almoudi, Antonio Mesquita, Roy Englebrecht and Thell Torrence.

57. Defendants Tapia and Does 1 through Does 10 were aware of this advantageous business relationships but, despite this knowledge, engaged in the conduct alleged herein.

58. Defendants undertook the alleged conduct for improper purposes, including but not limited to, inflicting an economic injury on Plaintiff.

59. As a result of the conduct alleged herein; Plaintiff has suffered damages in an amount to be proven at trial.

60. The conduct of Defendants as alleged herein was undertaken in bad faith, was malicious and manifested wanton disregard of and reckless indifference towards the rights of Plaintiff, thereby entitling Plaintiff to punitive or exemplary damages.

## FOURTH CLAIM FOR RELIEF
(Against Tapia for Intentional Interference with Contract)
**INTENTIONAL INTERFERENCE WITH CONTRACT**

61. Plaintiff Edward Bissau Mendy adopts, alleges, and affirms all allegations and averments contained in the above and forgoing paragraphs 7 to 60 of this Complaint.

62. By the conduct described herein and above, Defendant Tapia, and Does 1 through Does 10 have intentionally, maliciously, recklessly and/or wantonly interfered with the Contract as described above.

63. As a result of Inducement Defendants' conduct, Mendy have suffered and continue to suffer general, special, actual, and compensatory damages, for all of which Defendants are liable.

## FOURTH CLAIM FOR RELIEF
(Against all Defendants for Civil Conspiracy)
**CIVIL CONSPIRACY**

64. Edward Bissau Mendy adopts, alleges, and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

13

65. Defendants Layla McCarter, Luis Tapia and Does 1 through Does 10, and their associates conspired and continue to conspire with each other and others against Mendy, as alleged herein and above including, but not limited to intentionally defaming Mendy through vicious libel and slander, depriving Plaintiff of his contractual rights and/or interfering with his valuable business relations and his contractual relations.

66. On belief and information, Tapia is an integral part of the conspiracy and may have been the instigator and promoter of same by colluding with BoxRec, its owners, and possibly other defendants involved in the Mendy vs. BoxRec lawsuit in order to perpetrate the falsehood that not only is Mendy a horrible promoter but also, he was deserving of the actions meted on him, including the failure to record his fights. The full extent of the conspiracy and its total members are unknown but will be proven at trial.

67. As a result of Defendants' conduct and conspiracy, Plaintiff has suffered and continues to suffer general, special, actual, and compensatory damages, in an amount to be proven at trial for all of which Defendants are jointly and severally liable.

**FOURTEENTH CLAIM FOR RELIEF**
(Against all Defendants for Punitive Damages)
**PUNITIVE DAMAGES**

68. Plaintiff adopts, alleges, and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint.

69. Defendants' conduct was intentional, grossly negligent, reckless, willful, and wanton malicious oppressive, and/or unmindful of their obligations to Plaintiff and/or exhibited that entire want of care which would raise the presumption of conscious indifference to consequences so as to warrant the imposition of punitive and/or liquidated damages in an amount sufficient to punish, penalize, and/or deter Defendants, for which Defendants are jointly and severally liable.

70. Defendants acted capriciously and with wanton disregard for Plaintiff' contractual rights. As a result, Plaintiff is entitled to punitive damages to the full extent provided by New Jersey law.

### FIFTEENTH CLAIM FOR RELIEF
(Against all Defendants or Expense of Litigation and Attorneys' Fees)
**EXPENSES OF LITIGATION AND ATTORNEYS' FEES**

71. Plaintiff adopts, alleges, and affirms all allegations and averments contained in the above and forgoing paragraphs of this Complaint. Defendants breached the terms of the Contract by repudiating it. Therefore, Plaintiff may recover the expenses of this litigation including, but not limited to, reasonable attorneys' fees and costs, for all of which Defendants are liable.

72. Pursuant to both Nevada Law and New Jersey law, Plaintiff may recover attorney fees and expenses of litigation for which Defendants are jointly and severally liable.

73. Defendants' conduct has been in bad faith, stubbornly contentious and/or caused Plaintiff unnecessary trouble and expense, and on account thereof, Plaintiff is entitled to recover the expenses of this litigation including, but not limited to, attorneys' fees, for all of which Defendant are jointly and severally liable.

74. Alternative to and in conjunction with an award of attorney fees, Plaintiff should be awarded a reasonable amount for representing himself in this matter, should it be unnecessary for him the hire an attorney.

### REQUEST FOR JURY TRIAL

75. Plaintiff hereby request trial by jury.

**WHEREFORE,** Plaintiff prays that Defendants be cited and served with a copy of this petition and that, after all legal delays and due proceedings are had, there be judgment rendered in

favor of the Plaintiff, and against Defendants, Layla McCarter, Luis A. Tapia, and Does 1 through 10, individually and jointly and severally.

Plaintiff further prays that this court Award Plaintiff general damages in amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff special damages in amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff compensatory damages in amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff exemplary and punitive damages in an amount to be proven at trial.

Plaintiff further prays that this court Award Plaintiff the costs of this action together with reasonable attorney fees if an attorney is retained to represent Plaintiff or *quantum meruit* if not attorney is retained in an amount to be proven at trial, as provided for by law.

Plaintiff further prays that this court Grant such other and further legal and equitable relief as this court deems necessary and proper and adjudges after a trial by jury herein.

>Respectfully Submitted
>
>/s/ Edward Mendy
>
>_____
>EDWARD BISSAU MENDY, *PRO SE*
>13308 Paramount Blvd
>South Gate, CA 90280
>(504) 339-4782 (Cellular)
>ebmendy@me.com